UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL PETITE,<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 5:15-cv-543 (GJS)<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

In this social security benefits case, the administrative law judge ("ALJ") found that Petite could not perform his past relevant work.  Nonetheless, the ALJ concluded that Petite could successfully adjust to the occupation of data entry clerk based on data entry experience he had obtained while working as a laboratory supervisor.  Although Petite raises a number of errors, all of them hinge on his claim that the ALJ should have applied the light Grid regulations rather than the medium Grids as a framework.  Because the Court disagrees, the decision of the Commissioner is affirmed.

## PROCEDURAL HISTORY

This case has an incredibly long history, as it has already twice been the subject of litigation in this Court. Petite first filed his application on January 5, 2006 claiming that he had been disabled since June 1, 2002. [Admin. Rec. ("AR") 413-17.] The Commissioner denied the claim initially and upon reconsideration. [AR 48-52, 55-60.] Thereafter, ALJ F. Keith Varni conducted a hearing on January 7, 2008. [AR 20-45.] In a decision issued February 13, 2008, the ALJ concluded that Petite was not disabled. [AR 8-19.] Petite sought review from the Appeals Council, which denied review on April 30, 2009. Petite appealed to this Court, and on June 1, 2010, United States Magistrate Judge Paul L. Abrams remanded the case for the Commissioner's further consideration. [AR 308-24; *Carl Petite v. Michael J. Astrue*, Case No. 5:09-cv-1347-PLA, Dkts. 16 & 17).]

On remand, the matter was assigned to ALJ Mason D. Harrell. ALJ Harrell conducted a new hearing on June 7, 2011, which ultimately resulted in a July 20, 2011decision finding Petite not to be disabled. [AR 223-41, 518-70, 599-613.] Petite again appealed to this Court, and on March 28, 2012, Magistrate Judge Abrams again remanded the case for further consideration by the Commissioner upon stipulation by voluntary remand. [AR 614, 616, 618-19; *Carl Petite v. Michael J. Astrue*, Case No. 5:11-cv-01542-PLA, Dkts. 12-14.]

On remand, ALJ Harrell set another hearing for September 26, 2012, but Petite did not appear. [AR 501.] Petite had sought continuances, which were denied. [*Id*.] Petite later explained that he missed the hearing because he and his wife took an early 50th wedding anniversary vacation due to Petite's declining health, that his tickets were nonrefundable, and that nothing has been timely during the 7-year long disability process. [*See* AR 488-89.] The ALJ issued a third decision finding Petite not to be disabled on October 24, 2012. [AR 498-517.] The Appeals Council rejected a request to assume jurisdiction on January 21, 2015. [AR 476.] This case followed.

**SUMMARY OF THE ADMINISTRATIVE DECISION UNDER REVIEW**

Because the parties' dispute involves only Step Five of the disability review process, the Court summarizes only the portion of the decision relating to Step Five and other parts as necessary.[1]

The ALJ found, and no party disputes, the following residual functional capacity ("RFC"):

> [T]he claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand, walk, and sit six hours out of an eight hour work day with normal breaks every two hours; he can occasionally stoop and bend; he can climb stairs, but is precluded from climbing ladders; he is precluded from working at heights or balancing; the claimant can have no interaction with the public, but can have occasional non-intense interaction with co-workers and supervisors; the claimant can handle deadlines, but no quick decisions and cannot move quickly throughout the day on a consistent basis; and the claimant is precluded from multi-tasking, but can do complex tasks.

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

[AR 505.] The ALJ also concluded that Petite was an "individual closely approaching retirement age," "has at least a high school education and is able to communicate in English." [AR 510.] Though Petite was unable to perform prior work [AR 509], he had acquired "data entry" skills from his "past relevant work as laboratory supervisor[.]" [AR 510.]

The ALJ explained that, taking into account the proposed RFC for Petite, the vocational expert concluded that Petite could perform the "representative occupation" of "data entry clerk, DOT 203.582-054, sedentary exertionally, SVP 4." [AR 511.] Based on that opinion, which the ALJ found to be "consistent with the information contained in the Dictionary of Occupational Titles," ("DOT") the ALJ concluded that "the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers of the national economy." [*Id.*] Therefore, the ALJ found him not disabled for the period of June 1, 2002 through December 31, 2005. [*Id.*]

## HEARING TESTIMONY

Again, because Step Five is the only step at issue, the Court summarizes the hearing testimony only as related to the issues on appeal. Although the Commissioner held two hearings in this matter, vocational expert testimony was taken only at the June 7, 2011 hearing.[2]

---

[2] The Court notes that two different versions of the hearing transcript are currently in the administrative record. [*Compare* AR 246-85 *with* AR 518-70.] The Court has relied on the version of the transcript at AR 246-85, which it believes upon review to likely be more accurate. There are quantitatively significant, albeit seemingly nonsubstantive, differences between the two transcripts. If, upon review of this opinion, counsel believes otherwise, counsel is invited to file an appropriate post-judgment motion that identifies **specific** differences in the transcript that are **outcome determinative** here.

1    Vocational expert Porter testified. [AR 247; *see* AR 519.] After being presented
2 with Petite's proposed RFC (which was ultimately adopted), Porter testified that
3 Petite could not perform any of his prior occupations. [AR 278; *see* AR 560-61.]
4 Porter then identified the position of lab clerk—a light semi-skilled position with an
5 SVP of 3—that might contain "skills that would transfer to any jobs within [the]
6 limitations" of Petite's RFC. [AR 279; *see* AR 561.] Porter questioned Petite about
7 the tasks he performed in the lab, and specifically whether he was "doing data entry
8 on a day to day basis." [AR 279; *see* AR 562.] Petite responded affirmatively, and
9 noted that for "[e]very test that you do you have to fill out exactly what you're
10 doing[.]" [AR 279; *see* AR 562.] Petite acknowledged that he used Excel
11 spreadsheets "on a daily basis," and that he "actually instituted the Excel form,
12 rather than filling out a long form on paper, and have the clerk to type it." [AR 279-
13 80; *see* AR 562-63.]
14    Porter then told the ALJ that there would be data entry skills that would transfer
15 over from lab clerk to data entry clerk. [AR 280; *see* AR 563.] The following
16 exchange occurred:

> [ALJ:] All right. How much of a vocational adjustment
> would be required of someone that did the claimant's
> prior work and that went to either the lab clerk or the data
> entry position?
>
> [VE:] Well, I think that the lab clerk would be more than
> a minimal amount must??? in relative to the processes as
> related to the previous job that's transferring from which
> would be the lab supervisor. ***But the data entry would
> be minimal, because it's my understanding that was
> performed on a daily basis.***
>
> ALJ: You were doing that on a daily basis, is that right,
> the Excel sheets and such?
>
> CLMT: I was -- I was doing data entry and correcting
> data entry and transferring from Excel to Access and

5

> providing programs for people to fill out and put the data in so they couldn't crash databases. I was doing all kinds of things like that 10 to 12 years ago….
>
> ***
>
> ALJ: Right now, I'm just focused on how much of the, you know, the work you did with the computer with Excel and Access, and you were doing things, you were doing that on a daily basis back then?
>
> CLMT: Yes.
>
> ALJ: But that's a long time ago. I understand that. And maybe you can't do that anymore. Okay.

[AR 280-81 (emphasis added); *see* AR 564-65.] Petite later clarified that his data entry work was performed "for about a four-month period of time" during 2001-2002. [AR 282-83; *see* AR 566-67.] He also performed data entry in a different position in the 1970s. [AR 283; *see* AR 568.]

The vocational expert noted that if off task for more than five percent of the time, someone with Petite's RFC could not perform the data entry job. [AR 283-84; *see* AR 569.]

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074. The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the

decision. *Robbins v. Soc. Sec. Admin*, 466 F.3d 880, 882 (9th Cir. 2006); *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

Even if Petite shows the ALJ committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). And "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011).

That said, the burden of showing harm is still low. "Where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate." *Id.* at 888. Courts have "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006). In sum, "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and … 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (quoting *Stout*, 454 F.3d at 1055-56).

To determine whether an error was harmless, this Court may consider "the likelihood that the result would have been different" and "the impact of the error on the public perception of such proceedings." *Ludwig,* 681 F .3d at 1054. It may not, however, "appl[y] harmless error in a way that affirm[s] the agency on a ground not invoked by the ALJ." *Marsh*, 792 F.3d at 1172. Ultimately, "[t]he nature of [the]

7

application [of the harmless error doctrine] is fact-intensive—'no presumptions operate' and '[the Court] must analyze harmlessness in light of the circumstances of the case.'" *Id.* (quoting *Molina,* 674 F.3d at 1121).

## DISCUSSION

### I. At Step Five, the Burden Falls on the Commissioner to Identify Other Work the Claimant Can Perform.

As an initial matter, the parties disagree over who carries the burden at Step Five. Petite, citing *Silveira v. Apfel*, 204 F.3d 1257 (9th Cir. 2000) says the Commissioner does. [Dkt. 19 ("Jt. Stip.") at 8.] The Commissioner argues that she "carries a limited burden of production of identifying jobs someone with the claimant's vocational profile and functional capacity can perform," "but that the burden of persuasion always remains with the individual claiming entitlement to disability benefits." [*Id.* at 8-9 (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003).]

Whether Commissioner's argument on the regulatory text is correct or not, the Ninth Circuit has repeatedly held that "[t]he burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *see, e.g.*, *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) ("Once the claimant makes such a showing, the Commissioner of Social Security ('Commissioner') bears the burden of 'show[ing] that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.'" (citations omitted)); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("Once this prima facie case is established [by the claimant], the burden shifts to the Commissioner at the fifth step to show that the claimant may perform other gainful activity."). And step five is, most succinctly, "whether the claimant 'can make an adjustment to other work.'" *Molina*, 674 F.3d at 1110. The Ninth Circuit

8

1  does not draw the distinction between the burden of persuasion and burden of
2  production the Commissioner advances, so neither will this Court.  That said,
3  overall, the claimant bears the burden of demonstrating he is disabled.  *Parra*, 481
4  F.3d at 746 (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)) ("The
5  claimant bears the burden of proving steps one through four, consistent with the
6  general rule that '[a]t all times, the burden is on the claimant to establish [his]
7  entitlement to disability insurance benefits.'").

**II.     The ALJ Properly Conducted His Step Five Determination.**

Although Petite's briefing is unclear, the Court discerns a slew of attacks on the ALJ's determination of Petite's ability to make a vocational adjustment.  Petite argues that the ALJ erred by (1) not asking Porter, the vocational expert, a specific question that included the magic words "tools, work processes, work settings, or the industry," and therefore, not adducing evidence relating to that condition [Jt. Stip. at 6]; (2) failing to "make the finding of 'little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry'" [Jt. Stip. at 7]; (3) failing to obtain a DOT code for Petite's prior work—an allegedly necessary prerequisite to considering the requisite factors for vocational adjustment [*id.*]; (4) failing to identify a range of work, not a single occupation [*id.*]; and (5) rendering a decision on vocational adjustment on a record that allegedly "does not permit the inference that Petite could transfer to a significant range of semi-skilled work."  [Jt. Stip. at 8.]

Although Petite raises a myriad of issues with the ALJ's Step Five determination, this case really boils down to (1) whether the ALJ could permissibly rely on the medium Grid as a "framework" for decisionmaking, and (2) whether Petite was limited "to no more than light work" under 20 C.F.R. § 404.1568(d)(4).[3]  For the

---

[3] The relevant portion of 20 C.F.R. § 404.1568(d)(4) reads: "If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are

reasons that follow, the Court finds that the ALJ properly conducted his Step Five evaluation.

### A. The ALJ's Decision to Rely on the Medium Work Grid Is Supported By His Determination of Petite's RFC.

Neither party contends that a specific Grid[4] regulation mandates a "disabled" or "not disabled" outcome for a person with Petite's RFC, which contains both exertional and non-exertional limitations. "Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). "When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." *Hoopai*, 499 F.3d at 1075 (citations omitted). Ninth Circuit law is clear that if the Grids do not "*completely and accurately* represent a claimant's limitations," the ALJ **must** obtain and consider vocational expert testimony—*i.e.*, choose the latter option. *Tacket v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original); *see Lounsburry*, 468 F.3d at 1115 n.2 (noting that an ALJ may avoid consulting a VE only when the claimant's non-exertional limitations do not "limit further the range of work permitted by exertional limitations...."). When a VE must be consulted—*i.e.*, "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations"—"the grids are inapplicable." *Hoopai*, 499 F.3d at 1075 (quoting *Burkhart v. Bowen*, 856 F.2d

---

transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."

[4] 20 C.F.R. pt. 404, subpt. P, app. 2 contains the Grid Rules.

1335, 1340 (9th Cir. 1988)). In those cases, "the ALJ must use the grids as a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment." *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 (9th Cir. 1989) (internal citations and quotation marks omitted) (*cited in Lounsberry*, 468 F.3d 1111); *see also* Grid Rule § 200.00(a) ("In any instance where a rule does not apply, full consideration must be given to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations.").

The exertional limitations of Petite's RFC fit perfectly into medium work. [*Compare* AR 505 ("the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently") *with* 20 C.F.R. §§ 404.1567(c) & 416.967(c).] Seeking to escape the conclusion that the medium Grids can apply as a framework, Petite argues that he could not perform the full range of medium work, and thus, should have been judged using the light Grid framework. Although the Court agrees that the RFC indicates that Petite cannot perform all medium work,[5] Petite has presented no caselaw for the proposition that he advances: that once the Grids are inapplicable, the ALJ must consider the VE testimony to determine what framework he should apply. In other words, this Court has not found—and Petite has not offered—any legal source that required the ALJ to conclude from Petite's non-exertional

---

[5] It is clear that under the Commissioner's own rulings that the postural limitations alone exclude Petite from the **full range** of medium work. [*Compare* AR 505 ("he can occasionally stoop and bend") *with* Social Security Ruling 85-15 ("because of the lifting required?? for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base.").]

11

limitations that he was *de facto* capable of only light work, and then apply the light work Grid as a framework. To the contrary, Ninth Circuit caselaw suggests (if not demands) that once the Grids are inapplicable, their only remaining utility is to set a ceiling for the VE to identify a job that a person with the claimant's RFC can perform. *Cooper*, 880 F.2d at 1155-56. Once the ALJ moves past the Grids, it is the VE's testimony that fulfills the Commissioner's burden at Step Five. Accordingly, there was no error in applying Grid Rule 203.08 *as a framework*. [AR 510.]

### B. None of Petite's Other Claims Warrant Remand.

Petite's other claims of error all rely on the application of the *light* Grid rules. And so, because the ALJ was permitted to use the medium Grid rules as a framework, these claims all fail.

For example, because Petite is subject to the medium Grids framework, as the ALJ concluded, 20 C.F.R. § 404.1568(d)(4) does not apply, and the ALJ need not have determined or specified findings on whether "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." § 404.1568(d)(4); *see Bray*, 554 F.3d at 1225 (holding, in context of vocational adjustment, "that specific findings on transferable skills are necessary even where the ALJ relies on the testimony of a VE"); *Renner v. Heckler*, 786 F,2d 1421, 1424 (9th Cir. 1986) (holding that "to assure that the correct legal standard was applied[,]" when Section 404.1568(d)(4) applies, "the ALJ must either make a finding of 'very little vocational adjustment' or otherwise acknowledge that a more stringent test is being applied which takes into consideration appellant's age."). Nor does Section 202.00(e) of the light Grid rules apply, and so the ALJ need not have identified a range of work that Petite could adapt to. Appendix 2, § 202.00(e) (readily transferable to a significant range of semi-skilled or skilled work).

*Tomasetti v. Astrue* supports the Court's decision here. As Petite acknowledges, *Tomasetti*'s central holding is that the Court should not apply the Grid regulations

from one category (*e.g.* light work) to a person who falls in a different category (e.g., sedentary). 533 F.3d 1035, 1043-44 (9th Cir. 2008). The plain language of regulations like Section 404.1568(d)(4) also forecloses their application to a person who can perform more than light work. *E.g.*, § 404.1568(d)(4) ("If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) **that limits you to no more than light work**, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." (emphasis added)). And, although not dispositive here, it is not even clear to the Court that these regulations are to be applied when the ALJ is consulting the Grids solely as a framework.

In any event, even if Section 404.1568(d)(4) applied here, the Court would find the ALJ's failure was harmless in light of the record evidence. The ALJ's errors at Step Five would be harmless if, applying the heightened standard for transferability of skills, the vocational expert's and ALJ's identification of the data clerk position was correct. On the current record, the Court finds that it is beyond doubt that the ALJ would find under Section 404.1568(d)(4) that "little vocational adjustment is necessary" for Petite to transition from a laboratory supervisor to a data entry clerk. Petite testified that he used Excel and Access to perform data entry nearly daily at his position as a laboratory supervisor. [AR 279-80; *see* AR 562-63.] Knowing the difference between a laboratory supervisor and data clerk, the vocational expert testified that the skills would be transferable with only minimal adjustment because Petite performed the task of data entry on a daily basis. [AR 280; *see* AR 563.] Accordingly, the ALJ had before him evidence on the "tools, work processes, work settings, *and* the industry" and an opinion on the ultimate question of transferability. "No reasonable ALJ … could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner of the Social Security Administration is AFFIRMED;

(2) this action be DISMISSED WITH PREJUDICE; and

(3) that Judgment be entered in favor of the Commissioner.

**IT IS HEREBY ORDERED.**

DATED: January 27, 2016 _____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE